**DISTRICT COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. CROIX**

| | |
|---|---|
| **CARMEN DIAZ-VELEZ,** )<br>)<br>**Plaintiff,** )<br>**v.** )<br>)<br>**CULUSVI, INC. d/b/a COST-U-LESS and** )<br>**COST U LESS, INC.,** )<br>)<br>**Defendants.** )<br>_____) | **Civil Action No. 2006/130** |

**Attorneys:**
**Lee J. Rohn, Esq.,**
St. Croix, U.S.V.I.
    *For the Plaintiff*

**Linda J. Blair, Esq.,**
St. Croix, U.S.V.I.
    *For the Defendants*

## MEMORANDUM OPINION

### June 14, 2012

**Jones, District Judge**

THIS MATTER comes before the Court on Defendant Cost U Less, Inc.'s Motion for Summary Judgment, filed on December 15, 2010. (Docs. 86). The Motion for Summary Judgment has been fully briefed by the parties and is therefore ripe for our review. For the reasons discussed below, the Court finds that there are no material issues of fact, and therefore will grant summary judgment in favor of Defendant Cost U Less, Inc. ("Cost U Less" or "Defendant").

## I.  BACKGROUND

### A.  Procedural History

Plaintiff Carmen Diaz-Velez ("Plaintiff" or "Diaz-Velez") filed this action against Defendants Cost U Less and CULUSVI on October 5, 2006.[1] In the main, this case arises out a workplace accident suffered by Plaintiff while she was operating a meat slicer during her employment with Defendant.  Plaintiff asserts five claims against the Defendant:  (1) that Defendant intentionally injured Plaintiff by requiring her to use a defective machine upon which she claims to have had no experience, and that Defendant reasonably should have known Plaintiff would be injured (Count I); (2) Defendant intentionally retaliated against Plaintiff for filing an OSHA complaint Count II); (3) Defendant wrongfully discharged Plaintiff (Count III); (4) Defendant's actions resulted in intentional infliction of emotional distress (Count IV); and Defendant breached the implied covenant of good faith and fair dealing (Count V).   Plaintiff also requests an award of punitive damages (Count VI).

Following the close of discovery, Defendant filed the instant Motion for Summary Judgment, submitting that, as a matter of law, summary judgment must be granted on each count in the Defendant's favor.

### B.  Facts

On October 8, 2000, Plaintiff began employment with Defendant as a meat wrapper. (SMF[2] 1).  On February 17, 2005, Plaintiff injured her finger during the course of her

---

[1] During a status conference conducted by the Court on February 7, 2011, the parties agreed to the dismissal of Defendant CULUSVI, Inc. d/b/a Cost-U-Less from the case, and CULUSVI's Motion for Summary Judgment (Doc. 88) was accordingly granted by text entry on the docket.

[2] "SMF" refers to Defendant's Statement of Undisputed Material Facts.  (Doc. 87).

employment, while operating a band saw to cut a piece of meat. (SMF 4, 9). Plaintiff's band saw accident was reported by Cost U Less to OSHA on March 1, 2005. (SMF 13). Following the accident, OSHA conducted an unannounced visit at the Cost U Less store on March 18, 2005 and investigated the saw involved in Plaintiff's accident. (SMF 3, 4, 5). Following the accident and OSHA inspection, a cracked plastic covering of the upper wheel of the saw was replaced. (SMF 6). OSHA took no action against Cost U Less following the inspection. (SMF 8). As a result of the accident, the tip of Plaintiff's right middle finger is deformed and she alleges to have suffered from stress and headaches as well. (SMF 28). She did not seek psychological treatment for any of the stress or headaches. (SMF 29).

Following the accident, Plaintiff claims that she was retaliated against for complaining that the band saw was defective. Specifically, Plaintiff states that she was scheduled to work past 4:30 p.m., which created a problem because she did not have a baby sitter, and that she was forced to do inventory and work a disproportionate amount in the freezer. (SMF 11, 14, 16, 17, 19). On March 21, 2005, Plaintiff wrote a letter to the Cost U Less home office complaining about meat department manager Mike Benson's performance of his duties. (SMF 10).

On March 21, 2006, Plaintiff resigned from her job as a meat wrapper at the Cost U Less store. (SMF 25). Her resignation came a few days after complaining to manager Roy Sorenson about Benson's bad behavior as the manager of the meat department.

## II.   STANDARD OF REVIEW

"Summary judgment is proper where the pleadings, depositions, answers to interrogatories, admissions, and affidavits show there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Nicini v. Morra*, 212 F.3d 798, 805-806 (3d Cir. 2000) (en banc); *see also* Fed. R. Civ. P. 56(a). "Once the moving party points to

evidence demonstrating no issue of material fact exists, the non-moving party has the duty to set forth specific facts showing that a genuine issue of material fact exists and that a reasonable fact finder could rule in its favor." *Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.*, 172 F.3d 238, 252 (3d Cir. 1999).  A factual dispute is deemed genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).  In reviewing the evidence, the court may not weigh the evidence and must give the nonmoving party the benefit of all reasonable inferences.  *Reedy v. Evanson*, 615 F.3d 197, 210 (3d Cir. 2010) (citations omitted); *Bray v. Marriott Hotels*, 110 F.3d 986, 989 (3d Cir. 1997).

### III.   DISCUSSION

#### 1. Personal Injury in the Workplace

The Virgin Island Worker's Compensation Act ("WCA") bars private rights of action for individuals who have suffered a work-related injury.  The statute states as follows:

> When an employee is insured under this chapter, the right herein established to obtain compensation shall be the only remedy against the employer; but in case of accident to, or disease or death of, an employee not entitled to compensation under this chapter, the liability of the employer is, and shall continue to be the same as if this chapter did not exist.

24 V.I.C. § 284(a).  To be compensable under the WCA, an employee's injury must have "aris[en] out of and in the course of his employment."  24 V.I.C. § 252(a).  When an employee's work-related injury is compensable under the WCA, the exclusive remedy provision relieves the employer from common law liability for the injury.  *See Chinnery v. Gov't of the  Virgin Islands*, 865 F. 2d 68, 71 (3d Cir. 1989).

The Third Circuit has noted an exemption to this general rule for intentional torts committed by the employer.  *See Eddy v. V.I. Water and Power Auth.*, 369 F. 3d 227, 233 (3d

4

Cir. 2004). This exception is limited, however, to situations where the employer had an actual, specific and deliberate intent to cause the plaintiff injury. *Id*.

It is undisputed that on the date Plaintiff injured her finger at work, Cost U Less maintained Workmen's Compensation insurance and was the named insured, thus Plaintiff's injury was covered by the WCA. (SMF 9). Plaintiff argues, however, that her claim is exempted from the general rule barring private causes of action for injury in the workplace because Defendant's conduct was tantamount to an intentional tort. Specifically, Plaintiff claims that because she was not trained on the band saw she was operating, the harm experienced by her when she cut the tip of her finger was a deliberate and intentional injury caused by the Defendants.

We shall decline the Plaintiff's invitation to apply the exception to the general rule that bars her claim. Courts of the Virgin Islands have refused to characterize an employer's failure to provide appropriate safety tools, safety clothing and adequate instruction as intentional acts making an accident "virtually certain to occur." *Ferris v. Virgin Islands Industrial Gases, Inc.*, 23 V.I. 183 (V.I. Terr. Ct. 1987). Moreover, the Third Circuit has stated that "[a]ttempts to classify similar contentions as intentional torts are almost always unsuccessful because the actual injury remains accidental in character even where the corporate employer knowingly permitted a hazardous work condition to exist, willfully failed to provide a safe place to work or intentionally violated a safety statute." *Eddy*, 369 F. 3d at 234.

Accordingly, we find Plaintiff's personal injury claim against Defendant to be barred by the WCA, and the Defendant's Motion will be granted with respect to Count I.

      2.    <u>Retaliation</u>

Count II of Plaintiff's Complaint raises a claim of retaliation for the filing of the OSHA complaint. (Complaint, ¶ 38). However, no private cause of action exists for an employee to bring a claim for retaliation for the filing of a report of an OSHA violation. *See Messner v. HOVENSA, LLC*, Civil NO. 252/2001 (Mem. Op. VI Super. Ct. August 28, 2006) 7 and n. 8 *citing Drago Corp. v. Occupational Safety and Health Review Commission*, 613 F. 3d 1227, 1230 n. 2 (3d Cir. 1980).

Count II of the Plaintiff's Complaint could arguably be raising a cause of action under the Virgin Island Whistleblower's Protection Act. That statute states:

> An employer shall not discharge, threaten, or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment because the employee, or a person acting on behalf of the employee, reports or is about to report, verbally or in writing, a violation or a suspected violation of a law or regulation or rule promulgated pursuant to law of this territory or the United States to a public body unless the employee knows that the report is false, or because an employee is requested by a public body to participate in an investigation, hearing or inquiry held by that public body, or a court action.

10 V.I.C. § 122. The Virgin Islands Whistleblower Protection Act has a 90 day statute of limitations period. 10 V.I.C. § 123(A). However, Plaintiff resigned from her employment with Defendant on March 21, 2006, *more than six months* prior to filing her lawsuit on October 11, 2006. Thus, even if construed as a Whistleblower Protection Act claim, since all of Plaintiff's allegation of retaliation occurred prior to her resignation from Cost U Less, and do not fall within the three month period prior to the filing of this action, any potential claim under the Act is time barred. Accordingly, the Defendant's Motion will be granted with respect to Plaintiff's retaliation claims.

6

3.  Wrongful Discharge

To establish a wrongful discharge claim under the Virgin Islands Wrongful Discharge Act, a plaintiff bears the burden of establishing a *prima facie* case of wrongful discharge by proving by a preponderance of the evidence that: (1) she was an employee; (2) of a covered employer; (3) that she was discharged; and (4) that the discharge was wrongful. *See Warner v. Kmart Corp.,* 2009 U.S. Dist. LEXIS 44502 *57 (D.V.I. 2009) *citing Rajabahadoorsingh v. Chase Manhattan Bank*, 168 F. Supp. 2d 496, 505 (D.V.I. 2001). A plaintiff may also bring a claim under the Act if she was constructively discharged. "An employee's reasonable decision to resign because of unendurable working conditions is equated to a formal discharge for remedial purposes." *Warner*, 2009 U.S. Dist. LEXIS 44502 at *57, *citing Pennsylvania State Police v. Saunders*, 540 U.S. 129, 141 (2004). To prevail on this theory, a plaintiff "must allege in good faith . . . that she resigned because her employer made her working conditions so unpleasant or difficult that she was forced to resign." *Warner*, 2009 U.S. Dist. LEXIS 44502 * 57 (citations omitted). The harassment suffered by the plaintiff must, however, "be sufficiently severe or pervasive to alter the condition of the victim's employment to create an abusive work environment." *Id*. at *56.

Plaintiff contends that her resignation from employment with the Defendant on March 21, 2006 constituted actionable constructive discharge. To support this claim, Plaintiff complains that her schedule was changed in a way that forced her to work past 4:30 p.m. which caused her childcare problems at home, that she was treated inappropriately by manager Benson, forced to work an inventory shift, and that she was made to work disproportionate amounts in the freezer. Plaintiff contends that the

7

combination of these conditions were sufficiently severe and pervasive enough that they created an abusive working environment that would compel a reasonable person to resign. We disagree.

With regard to Plaintiff's schedule change, the record evidence shows that *prior* to the accident and subsequent OSHA complaint, Plaintiff was scheduled to work beyond her normal afternoon cutoff time on six separate occasions. (SMF 12). After Plaintiff's return to work post-injury and until November 3, 2005, she was scheduled to work until 5 or 5:30 p.m. on 14 occasions (SMF 14), and most of those shifts occurred in October 2005. Moreover, from November 3, 2005 until her resignation in March of 2006, Plaintiff was not scheduled to work past 4:30 p.m. except on two isolated occasions. (SMF 14 and 15). Simply put, the "change" in Plaintiff's work schedule cannot reasonably be described as a change at all, but merely appears to be part and parcel of a somewhat random work schedule in place in the Cost U Less meat department. Further, the main bulk of time that Plaintiff worked past her usual cutoff time took place in October of 2005, which is simply too remote in time from Plaintiff's February 2005 accident and the March 2005 OSHA investigation to suggest that the schedule change was retaliatory in any way. Further, Plaintiff's assignment to a January 2006 inventory shift, which took place from 4-5 pm (SMF 17) can hardly be considered severe or pervasive conduct by the Defendant directed at Plaintiff. The record evidence shows that this was a storewide inventory in which 60 employees participated, and during which the company provided dinner to its employees. (SMF 17). We can hardly find this work assignment to be abusive.

8

Next, while we recognize that Benson was a less than polite manager, we do not find his conduct to rise to such a level as to force Plaintiff's resignation. In making this conclusion, we are guided by the rationale contained in *Harley v. Caneel Bay, Inc.*, 193 F. Supp. 2d 833, 2002 U.S. Dist. LEXIS 4982 (D.V.I. 2002). In *Harley*, the plaintiff complained of harsh treatment by her supervisor which she claimed eventually led to her resignation. In dismissing her claim, the district court noted that "Harley's complaint focuses solely on the 'harsh' treatment by one supervisor, Smith. The Third Circuit Court of Appeals has warned that discrimination statutes should not be 'used as a means of thwarting an employer's nondiscriminatory efforts to insist on higher standards.' The evidence is clear that Smith was a demanding supervisor . . .There is, however, no evidence that Smith's standards were unreasonable." *Id*. at *9-10. It appears from the record that Benson lacked common courtesy and respect for his employees from time to time and that his managerial style was less than stellar. However, based on the undisputed facts, we cannot find that Benson's difficult managerial style to rise to a level tantamount to abuse such that Plaintiff felt compelled to resign because of him.

Finally, Plaintiff's complaints that she was forced to work disproportionate amounts of time in the freezer also do not compel a finding that she was constructively discharged. It is undisputed that all employees of the meat department must enter both the cooler and the freezer as part of their jobs. By her own admission at her deposition, the longest time Plaintiff ever spent in the freezer without emerging was one hour, because she was searching for merchandise. (SMF 23).

Based on the above analysis, we cannot find that a reasonable factfinder would determine that Plaintiff was constructively discharged from her employment with Cost U Less. The Defendant's Motion shall be granted on this claim.

### 5. Infliction of Emotional Distress

To establish a claim for intentional infliction of emotional distress, a plaintiff must present sufficient evidence that the defendant's conduct "could reasonably be regarded as so extreme and outrageous as to permit recovery." *Alvarez Pueblo Int'l*, 24 V.I. 141, 147 (V.I. Terr. Ct. 1989)(*citing Moolenaar v. Atlas Motor Inns, Inc.*, 616 F. 2d 87, 89 (3d Cir. 1980)). To be regarded as "so extreme and outrageous to permit recovery," the conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." *Cox v. Keystone Carbon Co.*, 861 F. 2d 390, 395 (3d Cir. 1988)(citing Restatement (Second) of Torts § 46, cmt. d). The Third Circuit has specifically noted that "it must be recognized that it is extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to provide a basis for recovery for the tort of intentional infliction of emotional distress." *Cox*, 861 F. 2d at 395.

The foregoing analysis set forth with respect to Plaintiff's constructive discharge claim applies with equal force on her emotional distress claim. There are simply insufficient facts in the record to support any reasonable determination that the Plaintiff suffered from intentional emotional distress at the hands of the Defendant. None of the factual allegations, even taken in combination are "so extreme and outrageous as to permit recovery," or are "so outrageous in character, and so extreme in degree, as to go

beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." *See Cox*, 861 F. 2d at 395. The Defendant's Motion shall be granted with respect to this claim as well.

### 6. Good Faith and Fair Dealing Claim

Plaintiff also alleges a breach of the implied covenant of good faith and fair dealing. Section 205 of the Restatement (Second) of Contracts provides that "[e]very contract imposes on each party a duty of good faith and fair dealing in its performance and its enforcement." In order for a plaintiff to succeed on a claim of breach of the covenant of good faith and fair dealing, she must prove acts by the defendant "that amount to fraud, deceit or misrepresentation." *Smith v. Virgin Islands Water and Power Auth.*, 2008 U.S. Dist. LEXIS 95852, *25 (D.V.I. 2008) *quoting Marcano v. Cowpet Beach Resort*, 31 V.I. 99 (V.I. Terr. Ct. 1995).

Plaintiff claims that the Defendant breached the covenant of good faith and fair dealing with respect to her employment contract when it failed to provide her with a safe working environment and when she was retaliated against for filing an OSHA complaint. However, the record facts establish that the band saw involved in the accident was not deemed defective by OSHA (SMF 4) and we have determined that Plaintiff did not suffer from abusive conduct in the workplace. Accordingly, we find that, as a matter of law, Plaintiff has not set forth a breach of the implied of covenant of good faith and fair dealing claim.

## IV.   CONCLUSION

For the reasons discussed above, the Court finds that there are no genuine issues of material fact and grants the Defendant's Motion for Summary Judgment. An appropriate Order accompanies this Memorandum Opinion.